FREDERICK W. SHAPPERT, Plaintiff-Appellee, *v.* RICHARD ROETTGER, Defendant-Appellant.

Second District (1st Division) No. 74-54

Opinion filed February 6, 1976.—Rehearing denied April 1, 1976.

John A. Strom, of Strom, Strom, Oakley & Ellis, of Belvidere, for appellant.

Miller & Hickey, of Rockford, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant, Richard Roettger, appeals from an interlocutory judgment order which denied his motion to dissolve a preliminary injunction prohibiting the sale of shared crops. He contends that the plaintiff did

not establish a right to the issuance of the injunction order and that the order therefore may not be a proper basis for a finding of contempt.

The plaintiff, Frederick W. Shappert, was the owner of a large farm property which he leased to the defendant under a share-crop lease. On August 9, 1973, Shappert filed a verified complaint in two counts. In Count I plaintiff alleged that under the lease he was entitled to an undivided one-half of all produce and one-half of the increase of all livestock on the farm; and that the defendant had converted a specified number of heifers and cows and an undetermined quantity of grain. In this count plaintiff prayed for a money judgment. In Count II plaintiff repeated the allegations of Count I and further stated that defendant had taken possession and sold cattle, a one-half interest which belonged to the plaintiff; that the defendant had threatened to convert to his own use and sell additional cattle; that this would destroy the value of the cattle, could not be adequately redressed exclusively by an action at law, and would cause further irreparable injury to plaintiff. In this count plaintiff prayed for a temporary injunction restraining the defendant from taking possession of, converting to his own use and selling cattle in which the plaintiff owned an undivided one-half interest.

Defendant filed a motion to dismiss the complaint. On August 17, 1973, the court in a docket order denied defendant's motion to dismiss, ruled on defendant to answer within 30 days, granted a "temporary" injunction against the sale of grain and cattle and continued the cause generally for a trial on the merits. The defendant's answer was filed on September 10, 1973. The preliminary injunction went into effect on September 13, 1973, upon filing of plaintiff's bond and the writ issued. The preliminary injunction order recited that defendant had sold cattle and grain in July of 1973 contrary to the lease agreement, that irreparable harm would result if defendant were permitted to sell livestock and grain in the future, and that defendant had stated in open court that he will make no sales of livestock or grain without the further order of the court. The order restrained defendant from:

> "* * * taking possession of, converting to his own use and selling cattle and grain in which the plaintiff owns an undivided one-half interest, until further order of this Court, and that neither party shall sell any such property except by their agreement or upon the order of this Court."

On November 20, 1973, plaintiff filed a sworn petition seeking a contempt citation. He alleged that defendant had contracted to sell 4,000 bushels of corn and 1,000 bushels of soy beans for future delivery in violation of the injunction order and that defendant had made delivery of all of the soy beans and 2201.77 bushels of corn without the consent

of the plaintiff. On December 20, 1973, Count I of the complaint was dismissed by stipulation. On December 21, 1973, the court, over defendant's objection, permitted plaintiff to amend Count II to add "and grain" in the places where "cattle" alone had been specified. Subsequently a supplemental complaint was filed with leave of court alleging further sales and contracts unknown to plaintiff at the time of the filing of the original petition. The evidentiary hearing was held on December 21 and 22, 1973, and the record shows that inquiry was permitted into both the merits of the injunction and whether it had been violated.

The defendant, called by the plaintiff as an adverse witness, testified that on June 7, 1973, he had contracted with Sandahl Farm Service, Inc., to deliver 500 bushels of beans on November 17, 1973; and had contracted with Central Grain Co. on June 25, July 20 and August 22, 1973, to deliver a total of 4,000 bushels of corn on December 15, 1973. He acknowledged that deliveries were made under the contracts at various times in October and November of 1973. Defendant testified that he had told Patrick Mattison, plaintiff's son-in-law, and plaintiff's agent, Maxwell Newport, about the contracts in October of 1973 some time after he had entered into them; that Newport told him to fill the bins with corn and that they would go to town with the balance; that there was an estimated corn yield in 1973 of 18,500 bushels and only a 10,100 bushel capacity in the farm bins for storage. He also said that he had in previous years contracted for various future deliveries of commonly owned corn. He testified that in 1973 he told Keith Grennan, plaintiff's farm manager, that he had contracted to sell 500 bushels of soy beans out of an estimated 2,700 bushels and that he delivered the beans because he had no place to store them and not intending to disobey the court order. He said that he had sold beans in the same manner in 1972.

Patrick Mattison testified for plaintiff that he first learned of defendant's contracts to sell grain in a conversation with plaintiff on October 19, 1973. He further testified that he had on numerous occasions told Roettger not to sell "anything" unless "we" know about it. He recalled that he particularly told defendant this on both October 21 and October 31 in 1973.

Keith Grennan, plaintiff's farm manager, testified that he had no knowledge of any grain contracts in 1973 until he learned about the Central Grain contracts in August 1973 and the Sandahl contracts in October 1973. He testified that he and plaintiff followed the defendant's truck when the deliveries of beans were made to the Sandahl Company on October 16 and 17, 1973. He further testified that plaintiff instructed him to allow the deliveries to be made. He also testified that he had

no knowledge of Roettger's contract for future deliveries of grain and had never been told about them by defendant.

Plaintiff, however, testified that he had told defendant personally and by letter dated February 14, 1973, that no sales or purchases of property in which plaintiff and defendant had a one-half interest were to be made without discussion either with plaintiff or his then manager, Keith Grennan, prior to the transaction. He stated that he had never had any conversation with Roettger in 1973, in which Roettger told him that he had contracted to sell corn or soy beans. The plaintiff was shown various contracts with either the Sandahl Company or the Central Grain Company and testified that prior to October of 1973 when he saw the deliveries being made he did not know of the existence of the contracts. He also denied that he had any knowledge of sales of futures in any prior year. He said that when he saw the October 16 and 17 deliveries in the trucks he assumed that they were being sold on the open market and not on future contracts.

At the conclusion of the plaintiff's case defendant moved for a finding of the issues for defendant contending that the allegations of Count II related to jointly owned cattle and that there was no proof of conversion of cattle. The court ruled that the parties had proceeded throughout with reference to enjoining both sales of cattle and grain and permitted the amendment of Count II to include the words "and grain."

Defendant then testified in his own case that he had told no one about the corn sales until November 11, 1973, when he told Mattison who was then the farm manager and plaintiff's son-in-law. He stated that Mattison informed him that they wanted one-half and it was all right to go ahead and fill the orders. He further testified that on October 17, 1973, both the plaintiff and Keith Grennan, plaintiff's farm manager, told him to sell the corn. Maxwell Newport called by the defendant stated that he was hired to help run the farm and that in November of 1973 there was a conversation between himself, Roettger and Mattison to the effect that they knew that defendant had contracted to sell some corn. He stated that a few days later Roettger called and asked permission to sell the corn and that he gave him permission to deliver it.

On the evidence the court concluded that the original injunctional order was properly issued and further found defendant in contempt for having sold and delivered grain after the issuance of the injunction. He also found that the difference between the price of the grain which was delivered at market value rather than on the basis of the futures contracts amounted to $795.63.

Following the court's finding the defendant, on January 11, 1973, filed a general motion to dissolve the preliminary injunction which the court denied. Defendant, as previously noted, appeals from this order.

Defendant argues that plaintiff did not establish his right to the issuance of a temporary injunction. He reasons that while the original complaint alleged the conversion and sale of cattle and the threat of additional conversion of cattle no evidence was presented relating to these allegations; that the evidence shows that plaintiff did not become aware of the contracts for future deliveries until a much later time and that therefore on the filing of the complaint the plaintiff could have had no knowledge or cause for alarm as to possible grain sales. He further argues that there was no showing of irreparable harm since the crop was· more than adequate to cover defendant's contract from his own share. He argues that even though plaintiff should not have been permitted to amend the complaint to include grain as well as cattle after the evidence was in, that nevertheless there was still no evidence that on or prior to the date of the issuance of the injunction writ that defendant had converted or threatened to convert or sell grain to plaintiff's damage.

Plaintiff responds that the only issue is whether the court abused the large discretion which it had to grant a temporary injunction and that there was no available issue as to the burden of proof or whether the pleadings and proof must conform. He argues that the defendant has not shown any abuse of discretion and that the court heard evidence on the complaint as supplemented from which it was clearly shown that defendant deliberately violated the order of the court by selling grain after the entry of the injunction order without the plaintiff's consent.

■■ It is well settled that the trial court is vested with large discretionary power in granting an order for a preliminary injunction. (*Seay & Thomas, Inc. v. Kerr's, Inc.,* 58 Ill. App. 2d 391, 400 (1965); *O'Brien v. Matual,* 14 Ill. App. 2d 173, 187 (1957); *Schultz v. Agenlian,* 90 Ill. App. 2d 131 (1967) (abstract opinion).) When the injunction is issued on the basis of the complaint the pleading must specify all facts necessary to justify the unusual relief sought. (*Hall v. Orlikowski Construction Co.,* 24 Ill. App. 3d 60, 62-3 (1974).) The necessary showing, however, may be made both by the pleadings and by the evidence if evidence is taken. (See *O'Brien v. Matual,* 14 Ill. App. 2d 173, 187 (1957).) An applicant for a preliminary injunction need not make out a case which will entitle him to the ultimate relief he seeks but may raise only a fair question as to the existence of the right claimed, making it appear advisable that the position of the parties should remain the same

until the court has the opportunity to consider the case on its merits. *Frederick Chusid & Co. v. Collins Tuttle & Co., Inc.*, 10 Ill. App. 3d 818, 821 (1973).

We must conclude based on the application of these principles that the preliminary injunction order was properly granted and that the motion to dissolve the order was properly denied.

The court before issuing the preliminary injunction had before it a complaint which charged actual sales of cattle and grain contrary to the covenants of the share-crop lease. The complaint was verified and the lease was attached. The colloquy between the court and counsel at the time the preliminary injunction was ordered is primarily directed at the actual sales and the threatened additional sales of cattle. However, it is clear that the parties were discussing the maintenance of the status quo by enjoining any sales of commonly owned property contrary to the lease agreement. Defendant's counsel stated that while he objected to the entry of any injunction order "there will be nothing sold until the outcome of this suit." The order and writ by its terms enjoined both the sale of cattle and the sale of grain.

The court's exercise of discretion in ordering a preliminary injunction and in refusing to dissolve it, while reviewable under Supreme Court Rule 307 (Ill. Rev. Stat. 1973, ch. 110A, par. 307), will not be overturned absent a clear showing of abuse of discretion. (*Jacobs v. Regas*, 75 Ill. App. 2d 283 (1966); *Weingart v. Weingart*, 23 Ill. App. 2d 154 (1959); *O'Brien v. Matual*, 14 Ill. App. 2d 173, 186 (1957).) Under the circumstances the trial court acted within its discretionary powers in ordering the preliminary injunction.

■■ Similarly, the court did not err in refusing to dissolve the injunction. The motion to dissolve, made after the full evidentiary hearings which were held both on the merits and upon plaintiff's petition to cite defendant for contempt for violating the court's order and after the court had stated its findings, did not point out in what particulars the court's exercise of discretion in initially ordering the injunction was abused. In fact, the evidence which was then before the court at the conclusion of the hearing showed, if anything, the necessity for an injunction to prevent sales of commonly owned property contrary to the terms of the share-crop lease. There was proof of sales of cattle and grain prior to the entry of the injunction order. Even though Count I was thereafter dismissed by agreement these facts were before the court as a basis for some apprehension. In addition, there was proof of actual deliveries of commonly owned grain after the writ had issued in performance of the prior unilateral obligations of defendant. The motion to dissolve the preliminary injunction was properly denied.

The order granting the preliminary injunction and denying the motion to dissolve are both therefore affirmed.

The plaintiff has suggested that if we affirm the preliminary injunction that we also affirm the order citing the defendant in contempt of court for violating the injunction order even though that issue has not been presented in this appeal. We do not feel justified in deciding an issue which has not been properly presented for review.

Affirmed.

GUILD and HALLETT, JJ., concur.