OFFICE ELECTRONICS, INC., Plaintiff and Counterdefendant-Appellee, *v.* GRAFIC FORMS, INC., *et al.,* Defendants.—(GRAFIC FORMS, INC., Defendant-Appellant; THOMAS J. McSWEENEY, Defendant and Counterplaintiff-Appellant.)

Second District   No. 77-411

Opinion filed January 10, 1978.

Ray H. Greenblatt and William T. Braithwaite, both of Mayer, Brown & Platt, of Chicago, for appellant.

Lester E. Munson, Jr., of Smith & Munson, of Wheaton, and David S. Acker and Stanley A. Walton, both of Winston & Strawn, of Chicago, for appellee.

Mr. JUSTICE NASH delivered the opinion of the court:

This is an interlocutory appeal from an order granting a preliminary injunction against two of the defendants, Thomas McSweeney and Grafic Forms, Inc., enjoining them from engaging, directly or indirectly, in any business which competes with plaintiff.

Plaintiff, Office Electronics, Inc. (hereinafter referred to as OEI), is an

Illinois corporation which manufactures and sells paper forms used in business. Among their business products are tabulating cards, stock and custom forms, continuous forms and various cards and labels. OEI has combined manufacturing facilities and sales offices at six locations and additional sales offices at three other cities throughout the Eastern United States and the Midwest and employs a total sales force of about 40 people. Defendant McSweeney was first employed by OEI in 1961 and he became chief operating officer and president of the corporation in 1970. In April 1973 plaintiff and defendant McSweeney entered into an employment agreement under the terms of which OEI employed McSweeney as president for a period ending December 31, 1977, at a $55,000 annual salary to be supplemented by an annual bonus computed at a percentage of OEI's after-tax income. The employment agreement contained a provision whereby McSweeney covenanted that if he breached the employment agreement he would not "engage directly or indirectly in any business which competes" with OEI within a 50-mile radius of any of the cities in which OEI had a place of business for a period of one year after the breach.

On February 14, 1977, Robert Houston, OEI's board chairman and sole shareholder, learned that McSweeney planned to purchase a used press for $47,000 from a Florida company with his personal funds and lease it to OEI obligating the company for rental payments to himself exceeding $10,000. While, as president, McSweeney was authorized to conduct the day to day operations of the business, he was, however, required to secure authorization for expenditures of $10,000 or more and had failed to do so in this case. By reason of this transaction and others deemed by plaintiff to have been breaches of the agreement, McSweeney was asked to resign and he did so.

Defendant Tueteberg was a vice president of OEI and regional sales manager for its Wisconsin and Minnesota operations. He did not have an employment contract with OEI and resigned effective June 10, 1977. Defendant Grafic Forms, Inc. (hereinafter referred to as Grafic), was incorporated on June 29, 1977, by defendants McSweeney and Teuteberg with corporate purposes similar to those of OEI. Grafic does not manufacture any products but does sell office supplies including tab cards, stock forms and xerography paper.

Plaintiff filed this action on July 7, 1977, upon learning of the incorporation of Grafic and its intended sales products, and on July 8 a temporary restraining order was entered, ex parte, against all three defendants. Subsequently, after a hearing on plaintiff's request for a preliminary injunction, the trial court enjoined defendant McSweeney, and Grafic, so long as McSweeney was associated with it, from engaging directly or indirectly in any business competing with OEI by the sale of

any product sold by it within the 50-mile radius of those cities in which OEI has a place of business effective to February 14, 1978. The preliminary injunction also prohibited defendants from selling or attempting to sell xerography paper, a product OEI does not manufacture or sell in that form, to certain customers of OEI. The trial court denied plaintiff's request for preliminary injunction as to defendant Teuteberg and no appeal has been taken therefrom.

Defendants McSweeney and Grafic appeal from the entry of the preliminary injunction pursuant to Supreme Court Rule 307 (Ill. Rev. Stat. 1975, ch. 110A, par. 307), contending the trial court erred in granting preliminary injunctive relief and, in addition, that that portion of the order enjoining the sale of xerography paper was error in that the sale of a product not sold by OEI does not constitute competition with it and may not be prohibited.

■■ It is well settled that the trial court is vested with a large measure of discretion in the granting of or the refusal to grant a preliminary injunction; its determination will not be overturned absent a showing of the abuse of that discretion. *Shappert v. Roettger* (1976), 36 Ill. App. 3d 452, 343 N.E.2d 695.

■■ This court has recently set forth the requirements for preliminary injunctive relief in *McCormick v. Empire Accounts Service, Inc.* (1977), 49 Ill. App. 3d 415, 417, 364 N.E.2d 420, 421:

"For a preliminary injunction to issue, the party seeking the injunction must carry the burden of persuasion on four issues: (i) that he has no adequate remedy at law and will be irreparably injured if the injunction is not granted; (ii) that the threatened injury to him will be immediate, certain and great if the injunction is denied while the loss or inconvenience to the opposing party will be comparatively small and insignificant if it is granted; (iii) that he has a reasonable likelihood of prevailing on the merits of the case; and (iv) that granting the preliminary injunction will not have an injurious effect upon the general public. [Citations.]"

The issuance of a preliminary injunction is an extraordinary remedy and should be granted only with the utmost care. To warrant its issuance a party must clearly show a need to preserve the status quo, that is, that last, actual, peaceable and uncontested status which preceded the pending controversy. *Spunar v. Clark Oil & Refining Corp.* (1977), 53 Ill. App. 3d 477, 368 N.E.2d 990.

■■ We find that under the evidence presented in this case the trial court did not abuse its discretion in determining that plaintiff has met its burden of proof and in granting the preliminary injunction.

■■ Clearly the purpose of the restrictive covenant in the instant case was to protect the plaintiff from losing business customers to defendant

McSweeney by virtue of his familiarity with its affairs and the affairs of its clients which he gained during his employment by plaintiff. That, in essence, is what McSweeney had agreed he would refrain from doing as a quid pro quo of his earlier continued employment by plaintiff on the terms we have described. Defendants argue that plaintiff has an adequate remedy at law in money damages. Defendant McSweeney had been employed by plaintiff for several years as its president and chief operating officer, managing all of its day to day operations. He had knowledge of and access to all its customer information and he was responsible for its pricing policies. In short, he posed a serious potential threat to plaintiff when he formed Grafic for the purpose of selling products similar to those sold by plaintiff in the same geographical areas. The damage to plaintiff's business which might have occurred between July 1977, when the preliminary injunction was issued, and February 14, 1978, when the restrictive covenant expires, could not readily be ascertained in an action for money damages, as such damages would necessarily extend well past the expiration of the restriction should defendant McSweeney be permitted to utilize his extensive familiarity with plaintiff's business and customers in competition with plaintiff. The remedy at law in this case would not be "clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy. [Citations.]" (*K.F.K. Corp. v. American Continental Homes, Inc.* (1975), 31 Ill. App. 3d 1017, 1021, 335 N.E.2d 156, 159.) The trial court did not err in finding plaintiff would suffer irreparable injury if injunctive relief was not granted and that plaintiff had no adequate remedy at law.

■■ Defendants further contend that the court erred in finding the threatened injury to plaintiff was immediate and great while the injury to defendants would be comparatively small if the injunction were issued. While no evidence of sales actually lost to Grafic was presented at the hearing on the motion for preliminary injunction, "[t]here is no requirement that a court must wait until an injury occurs before granting relief. [Citation.]" (*Armour & Co. v. United American Food Processors, Inc.* (1976), 37 Ill. App. 3d 132, 137, 345 N.E.2d 795, 799.) Defendant McSweeney had contacted several of OEI's regular customers and had made sales to them in apparent violation of his agreement with plaintiff. The trial court correctly determined that preliminary injunctive relief was necessary to maintain the status quo until a full hearing on the merits of the case could be held.

Defendants also argue that plaintiff has not established a reasonable likelihood it will prevail on the merits of its case. Plaintiff maintains that defendant McSweeney did breach his employment contract in more than one instance which thereby invoked the restrictive covenant against him. It is not necessary that plaintiff's proof at this stage be incontrovertible or

complete in every detail. The issuance of the injunction does not determine the ultimate rights of the parties nor does it finally decide the merits of the case. "All that is necessary is that the petitioning party raise a fair question as to the existence of the right claimed and lead the court to believe he probably will be entitled to the relief prayed for if the proof should sustain his allegations." (*C. G. Caster Co. v. Regan* (1976), 43 Ill. App. 3d 663, 666, 357 N.E.2d 162, 165.) Whether defendant McSweeney's actions constituted a breach of his employment contract are for the trial court to decide at a hearing on the merits. We determine, however, that plaintiff has presented sufficient evidence to establish a reasonable likelihood of success on the merits of the controversy. See generally *Patient Care Services, S.C. v. Segal* (1975), 32 Ill. App. 3d 1021, 1029, 337 N.E.2d 471, 478; *Paulman v. Kritzer* (1966), 74 Ill. App. 2d 284, 291, 219 N.E.2d 541, 544.

■■ Finally, defendants contend that the court erred in enjoining defendants from the sale of xerography paper, a product not sold by OEI. The restrictive covenant in the employment contract entered into by plaintiff and defendant McSweeney prohibits him from "engaging, directly or indirectly, in any business which competes" with OEI. The evidence in this case suggests that xerography paper is an alternate product used for the same purposes as certain of the products currently being sold by OEI and thus would be directly competitive with them. Under these circumstances the trial court correctly prohibited the sale of xerography paper to OEI's customers.

For the reasons stated we affirm the order of the trial court granting a preliminary injunction against defendants Grafic Forms, Inc., and Thomas McSweeney.

Affirmed.

GUILD and RECHENMACHER, JJ.