SHORR PAPER PRODUCTS, INC., Plaintiff-Appellant, *v.* DAVID FRARY, Defendant-Appellee.

Second District   No. 79-90

———

Opinion filed August 13, 1979.

Bruce A. Brown, of Goldsmith, Thelin, Schiller and Dickson, of Aurora, for appellant.

Thomas W. Grant, of Yorkville, for appellee.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

This is an appeal from an order denying a preliminary injunction against defendant, David Frary, which sought to enjoin him from directly or indirectly competing with plaintiff, Shorr Paper Products, Inc., for one year, within a 100-mile radius of plaintiff's business in Aurora, Illinois.

Plaintiff, an Illinois corporation, is an industrial wholesale packaging company, selling converted paper products, namely, cartons, twine, tapes, odd lots, newsprint, bags, and the like. It has been engaged in this type of business for nearly 60 years. It had total sales of $700,000,000 in the last fiscal year with a gross profit of 2.1 million dollars. There is nothing unique about the products plaintiff sells; however, it is the only company in the area that not only converts paper but also sells it; the conversion process itself is no secret. Plaintiff has a customer list which contains approximately 4000 accounts, 90% of which are located within a 100-mile radius of Aurora.

Defendant was first employed by plaintiff in 1970 as a purchasing agent. He became a salesman, sales manager, and then vice president-sales, which position he held when he left plaintiff's employ. As vice president-sales, defendant was in charge of plaintiff's entire sales force. Defendant would review the salesmen's progress, have sales reports summarized, and would deal with manufacturers. He would also assist in training and placing salesmen and reviewing daily invoices. He had his own accounts while vice president-sales, and contacted other customers with his salesmen. Defendant had complete knowledge of plaintiff's operation, the products and the paper business itself. He was aware of the needs of plaintiff's customers and how best to serve them and was personally familiar with plaintiff's major accounts.

On November 16, 1977, defendant entered into a written employment contract with plaintiff. The written contract provided in pertinent part:

"* * * 6(a) Employee agrees * * * the names of customers are

and shall remain the exclusive property of employer, are confidential and are of great value to employer. Employee further agrees that all other information used by employee in soliciting customers, including, but not by way of limitation, pricing lists, sales invoices and the names of customers' personnel are trade secrets, are confidential and are valuable property of the employer, and that any such information developed by employee during the course of his employment is and shall remain the property of employer. * * *.

(b) * * * during employee's employment and *for the one-year period immediately succeeding the termination of employee's employment, employee, shall not, directly or indirectly, and in the geographic area serviced by employer, perform or offer to perform any services or engage in business similar to or competitive with employer, or to own, in whole or in part, manage, operate, control, join or participate in, or be connected with, * * * any business or undertaking which shall, directly or indirectly perform or offer to perform any services or sales similar to or competitive with the employer.*

(c) Employee recognizes and acknowledges that certain services which the employer performs will be confidential, * * * that the good will of the employer depends, among other things, on keeping such services and information confidential; and that unauthorized disclosure of the same would irreparably damage the employer. * * *

(d) Further, employee recognizes and acknowledges that the business matters and affairs of the employer, and the methods of business operation of the employer, are valuable and confidential; * * * that unauthorized disclosure of same would irreparably damage the employer. * * *

\* \* \*

(f) Employee acknowledges that employer's remedy at law in the form of monetary damages for any breach by employee of any of the provisions of this section 6 may be inadequate and that, in addition to any remedy at law for such breach, the employer * * * shall be entitled * * * to institute and maintain any appropriate proceeding or proceedings in equity, including suits for specific performance and or injunction. * * *" (Emphasis ours.)

After signing the employment contract, defendant continued to work for plaintiff until November 20, 1978, at which time he left plaintiff's employ. Prior to his leaving, defendant had set up his own company under the name of Frary Packaging, Inc. The business was incorporated and business cards were printed up prior to defendant's leaving plaintiff's

employ. Frary Packaging, Inc., was to sell products competitive to plaintiff within a 100-mile radius of Aurora and beyond.

Thereafter, defendant contacted business customers, suppliers and haulers of plaintiff; the customers, some 20 or more, were all within a 100-mile radius of Aurora. On November 27, plaintiff filed its complaint seeking a temporary restraining order, preliminary and permanent injunction, restraining defendant from such conduct for a period of one year from November 20, 1978, in an area of a 100-mile radius from plaintiff's business in Aurora. On November 29 defendant was served with a temporary restraining order, ordering him to desist and refrain from performing or offering to perform any services or engage in business similar to one competitive with plaintiff; defendant, however, thereafter contacted a hauler and some suppliers. A hearing on plaintiff's request for a preliminary injunction and on a petition for rule to show cause to hold defendant in contempt for violating the temporary restraining order was held. On January 26, 1979, the trial court entered an order denying plaintiff's request for the preliminary injunction; defendant, however, was held in contempt and fined $150 for violating the temporary restraining order. The trial court denied plaintiff's motion to vacate the order and to stay the effect of the order. It is from the denial of the preliminary injunction that plaintiff appeals.

■■ It is well settled that the trial court is vested with a large measure of discretion in the granting or refusing to grant a preliminary injunction; its determination will not be overturned absent a showing of the abuse of that discretion. (*Office Electronics, Inc. v. Grafic Forms, Inc.* (1978), 56 Ill. App. 3d 395, 398, 372 N.E.2d 125, 128.) In *McCormick v. Empire Accounts Service, Inc.* (1977), 49 Ill. App. 3d 415, 364 N.E.2d 420, the court stated:

> "For a preliminary injunction to issue, the party seeking the injunction must carry the burden of persuasion on four issues: (i) that he has no adequate remedy at law and will be irreparably injured if the injunction is not granted; (ii) that the threatened injury to him will be immediate, certain and great if the injunction is denied while the loss or inconvenience to the opposing party will be comparatively small and insignificant if it is granted; (iii) that he has a reasonable likelihood of prevailing on the merits of the case; and (iv) that granting the preliminary injunction will not have an injurious effect upon the general public." 49 Ill. App. 3d 415, 417, 364 N.E.2d 420, 421.

In its letter opinion, the trial court found as follows:

> "Although the restraint was not unreasonable solely in terms of time, it was in terms of territory and should not be enforced for a

lack of proof of irreparable injury, immediate and certain to the plaintiff. Here, the restraint amounts to an anticompetition clause in a business which is not unique but has scores and scores of competitors in the same field and in the immediate area when the restraint is sought and thousands of competitors in the nationwide area covered by the terms of the contract itself. The knowledge of customers is not a trade secret, nor unique."

In reaching its decision the trial court relied upon *McCormick v. Empire Accounts Service, Inc.* In that case, McCormick brought suit against Empire, a collection agency and his former employer, for wrongful termination of his employment contract. Empire countersued and moved for a preliminary injunction alleging that McCormick had violated a noncompetition clause in the employment agreement. Under its terms, McCormick was precluded from working for any business providing a service similar to that offered by Empire within 100 miles of the city limits of Chicago for two years after his involuntary termination, but for only six months if he resigned. McCormick was Empire's president and chief operating officer when Empire discharged him. McCormick accepted employment with one of Empire's competitors and began soliciting business from Empire customers. In upholding the denial of the preliminary injunction sought by Empire, the reviewing court determined that Empire had not established that it was subject to immediate, certain and ascertainable injury and that the resultant harm to McCormick from the granting of such an injunction would be comparatively small and insignificant. The court stated that no evidence was presented that McCormick had succeeded in taking away any of Empire's customers, and further that there was no evidence that the customers were leaving Empire because of his efforts nor did it show that in future McCormick would be able to do so. The court stressed that the business was a highly competitive one, and in which personal contacts seemed of questionable importance, and it did not appear that McCormick would cause any immediate or great injury to Empire. In contrast, the injury to McCormick would be great, especially as the 100-mile radius restriction included areas in which Empire did not do any business.

Further, the court held that Empire failed to show that the restriction was necessary for the protection of its business, since Empire itself published brochures which announced the types of businesses from which it drew its customers, therefore allowing any collection agency to contact Empire's customers by soliciting the firms listed under that type of business in a classified directory. The court found that there was nothing confidential about the names and addresses of the firms Empire

and its customers were serving but that they were common knowledge in the trade world, usually ascertainable by anyone engaged in the collection business.

The recent case of *Office Electronics, Inc. v. Grafic Forms, Inc.*, presents a situation even more similar to the facts before us. In *Office Electronics, Inc.*, plaintiff, a manufacturer and seller of paper business forms and defendant, plaintiff's president and chief operating officer, entered into an employment agreement which contained a restrictive covenant prohibiting defendant from engaging directly or indirectly in any business which competed with plaintiff within a 50-mile radius of any cities in which plaintiff had a place of business for a period of one year after breach of the contract. Thereafter, defendant was asked to resign; following his resignation, defendant incorporated a competing business against plaintiff in the areas proscribed by the agreement. A preliminary injunction was granted which was upheld on appeal. On review, this court stated as follows:

"Clearly the purpose of the restrictive covenant in the instant case was to protect the plaintiff from losing business customers to defendant McSweeney by virtue of his familiarity with its affairs and the affairs of its clients which he gained during his employment by plaintiff. That, in essence, is what McSweeney had agreed he would refrain from doing as a quid pro quo of his earlier continued employment by plaintiff on the terms we have described. Defendants argue that plaintiff has an adequate remedy at law in money damages. Defendant McSweeney had been employed by plaintiff for several years as its president and chief operating officer, managing all of its day to day operations. He had knowledge of and access to all its customer information and he was responsible for its pricing policies. In short, he posed a serious potential threat to plaintiff when he formed Grafic for the purpose of selling products similar to those sold by plaintiff in the same geographical areas. The damage to plaintiff's business which might have occurred between July 1977, when the preliminary injunction was issued, and February 14, 1978, when the restrictive covenant expires, could not readily be ascertained in an action for money damages, as such damages would necessarily extend well past the expiration of the restriction should defendant McSweeney be permitted to utilize his extensive familiarity with plaintiff's business and customers in competition with plaintiff. The remedy at law in this case would not be 'clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy. [Citations].' [Citation.]" 56 Ill. App. 3d 395, 398-99, 372 N.E.2d 125, 128-29.

■■ Keeping in mind that the issuance of a preliminary injunction is an extraordinary remedy and should be granted with the utmost of care (*Office Electronics, Inc.*), we determine that plaintiff has met its burden of proof and the trial court erred in denying the preliminary injunction. Admittedly, as in *McCormick*, plaintiff here is involved in a highly competitive business; however, the "personal contact" with customers which was of questionable importance in *McCormick* is as vital here as it was in *Office Electronics, Inc.* Defendant here, in his position as vice president-sales was in charge of plaintiff's entire sales force as well as servicing his own accounts. He had complete knowledge of plaintiff's business operations which included not only knowing the names and locations of plaintiff's customers but their requirements and how best to serve them. This information was not released publicly, nor was it common knowledge in the trade. Further, by signing the employment contract defendant agreed that the customer names, plaintiff's services and methods of business operation were the exclusive property of plaintiff, confidential and of great value to plaintiff. Further, given the time frame involved, from the filing of the suit on November 27, 1978, to the running of the restriction on November 20, 1979, it would be more than difficult to ascertain money damages in such a case as the effect may be far more reaching than the period of the restriction. See *Office Electronics, Inc.*

■■■ Finally, while there is nothing in the record to indicate that defendant has succeeded in making a sale to one of plaintiff's customers, there is no requirement that a court must wait until an injury occurs before granting injunctive relief in a restrictive covenant case. (*Office Electronics, Inc.*) By setting up such a corporation designed to compete with the business of his former employer and actively soliciting plaintiff's customers, as well as suppliers and haulers, defendant, given his knowledge of plaintiff's customers' needs and business operations, has created a situation threatening great and immediate harm to plaintiff.

However, we must also consider whether as compared to such harm, the loss or inconvenience to defendant will be comparatively small and insignificant. The employment contract agreed to and signed by defendant provided that defendant could not compete in a business similar to plaintiff's for a one-year period following termination of his employment with plaintiff, within the geographical area served by plaintiff. Defendant argues that the territorial restraint is unreasonable and that the area served by plaintiff includes not only the Aurora area and the State of Illinois but extends into Wisconsin, Iowa, Indiana, California, Florida and is potentially nationwide. Further, that under the language of the restriction, plaintiff is seeking to prevent defendant from making sales to potential as well as existing customers of plaintiff, which sells a variety

of products from toilet paper to office furniture. Thus defendant maintains he would be prevented from working as a stockboy in a local grocery store by reason of the fact that grocery stores sell products similar to and competitive with products sold by plaintiff.

■■ We find defendant's construction of the contract in this regard somewhat unreasonable. Admittedly, the employment contract does not provide a specific limitation; however, there was testimony that 90% of plaintiff's customers were located within a 100-mile radius of plaintiff's business in Aurora. The presence of a few customers in other States does not indicate that these areas are serviced by plaintiff; further, plaintiff is only seeking to enforce the contract within the 100-mile radius. Thus defendant is free to compete with plaintiff in the outside areas for these customers. Defendant himself testified that he hoped and did intend to conduct his business beyond a 100-mile radius of Aurora. As to defendant's latter contention, plaintiff is a wholesale seller of paper products and related items whereas a grocery store, to use defendant's analogy, is a retail outlet. The contract does not prevent defendant from dealing in paper products but only from participation in businesses which are in competition with plaintiff in the geographical area serviced by plaintiff. Defendant is still able to engage in his chosen trade outside the 100-mile radius of Aurora, and following the expiration of the one year limitation, which runs from November 20, 1978, to November 20, 1979, he will be able to compete with plaintiff within that radius.

Defendant, however, contends that the restrictive covenant in this case is unreasonable and therefore may not be enforced. The standards to be applied in determining the validity or reasonableness of a contract in restraint of competition were set forth by our supreme court in *House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 225 N.E.2d 21. There the court stated:

> " 'In determining whether a restraint is reasonable it is necessary to consider whether enforcement will be injurious to the public or cause undue hardship to the promisor, and whether the restraint imposed is greater than is necessary to protect the promisee. [Citations.]' [Citation.]" (37 Ill. 2d 32, 37, 225 N.E.2d 21, 24.)

Each case must be determined according to its own particular facts and circumstances which by necessity vary in time, area and degree of confidential relationship between employer and employee. *Barrington Trucking Co. v. Casey* (1969), 117 Ill. App. 2d 151, 253 N.E.2d 36.

First, there is no evidence in the record before us indicating that enforcement of the restrictive covenant will in any way be injurious to the public. The evidence showed that the business in which plaintiff is engaged is a highly competitive one and the public would not be forced into dealing solely with plaintiff in order to obtain such goods and

services as plaintiff provides. Nor, as we pointed out in our discussion of the comparable loss and inconvenience to defendant, does the restrictive covenant work any undue hardship on defendant.

However, a serious question arises as to whether the restriction before us is greater than is necessary for the protection of plaintiff. While finding the restraint reasonable in terms of time (one year), the trial court found the restraint unreasonable in terms of territory (the geographic area serviced by employer). Plaintiff contends that the territory restriction is reasonable, but, in the alternative, argues that if we determine that a specific geographical limitation is required, that this court modify the contract to include a specific mileage restriction.

A court of equity may, under some circumstances, modify the restraint in a contract of employment; however, the fairness of the restraint initially imposed is a relevant consideration to a court of equity. *Barrington Trucking Co. v. Casey.*

Defendant argues that the territory restriction contains no reasonable limitation as plaintiff has customers in many parts of the country. However, in its complaint plaintiff requested that defendant be restrained from competing with plaintiff in an area of 100-mile radius from plaintiff's place of business in Aurora. There was testimony at trial that 90% of plaintiff's customers were located within a 100-mile radius of Aurora. Further, plaintiff submitted that the phrase "geographical area serviced by employer" is limited in fact to the 100-mile radius of Aurora; that merely having a few customers in other parts of the country does not indicate that plaintiff services those areas; and if plaintiff had so intended it would have designated it as a geographical sales area. Finally, there is nothing to indicate either in the pleadings, the record, or the briefs before this court that plaintiff has attempted to enforce any other territorial restriction than the 100-mile radius of Aurora.

There are also other relevant considerations in this case. Defendant worked for plaintiff for approximately eight years. His employment exceeded traditional boundaries of salesmen's responsibilities. It involved extensive customer contact and intimate knowledge of customer requirements. These customers, for the most part, were given to defendant by plaintiff; yet, their contact with plaintiff was handled by defendant, and they were accustomed to dealing with defendant. Further, defendant entered into the employment contract containing these restrictions and agreed to its terms. Defendant is an intelligent, well-educated man; there is no allegation that he was coerced into signing the agreement. Finally, while still employed by plaintiff he incorporated his own business which would be in direct competition with plaintiff and had business cards printed up. Within 10 days after leaving plaintiff's employ, he had solicited 20 customers of plaintiff's as well as suppliers and haulers.

■■ We therefore conclude that the evidence indicates that the territorial restriction intended, though not specified, was the 100-mile radius of Aurora and that such a restriction does not exceed those limitations which are necessary for the protection of plaintiff.

■■ Finally, plaintiff is also required to prove that it has a likelihood of success on the merits of the case. It must be noted that in order to show a likelihood of success on the merits, a party is not required to make out a case which in all events will warrant relief in the final hearing. (*Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 329 N.E.2d 414.) All that is necessary is that the petitioner raise a fair question as to the existence of the right claimed and lead the court to believe he probably will be entitled to the relief claimed if the proof should sustain his allegation. (*Office Electronics, Inc.*) Based upon the evidence set forth, we conclude that plaintiff has shown a likelihood of success on the merits.

In order for restrictive covenants in employment contracts to have anything but a hollow meaning, they must be enforced where equitable. The defendant here, an intelligent and well-educated man, had been employed by plaintiff for approximately eight years and occupied a position giving him access to confidential information. He signed the employment contract recognizing the confidentiality of the information and agreed to the restrictive covenant. Defendant admitted that while still employed by plaintiff he incorporated his own business, had business cards printed and prepared to open his own business in competition with plaintiff. Given defendant's conduct, it is this court's opinion that if ever a restrictive covenant should be enforced it is the restrictive covenant before this court.

We conclude, based upon the evidence and the record, that the trial court erred in finding that plaintiff would not suffer irreparable injury, and further, that the danger posed by defendant was immediate, certain and great as compared to the loss or inconvenience to defendant. Also, the evidence shows that plaintiff carried its burden as to showing it did not have an adequate remedy at law and that it had a reasonable likelihood of success on the merits. Further, the evidence established that the restraint initially imposed was reasonable. We therefore reverse and remand this case for modification of the territorial restriction to include the specific requirement of a 100-mile radius of Aurora, to conform to the evidence in the record and for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

RECHENMACHER and LINDBERG, JJ., concur.