JOHN T. McCORMICK, Plaintiff-Appellee, *v.* EMPIRE ACCOUNTS SERVICE, INC., Defendant-Appellant.

First District (3rd Division)   No. 76-1080

Opinion filed May 25, 1977.

Donald L. Johnson, of Chicago (Marks, Katz, Walker & Blatt, of counsel), for appellant.

John V. Ryan, III, of Chicago (Rooks, Pitts, Fullager & Poust, of counsel), for appellee.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

John McCormick, the counterdefendant, was one of two co-founders in 1960 of Empire Accounts Service, Inc., a Chicago-based collection agency. He owned half of the company's stock, and on March 31, 1973, he and the owner of the other half sold their stock to Daisy Corporation. By an agreement of the same date entitled "Employment Agreement," Empire employed McCormick as a sales representative for a period ending March 31, 1978. On May 10, 1974, the term of the employment agreement was extended to March 31, 1982. McCormick worked as a salesman until June 1975 when he was elected Empire's president and chief operating officer. Empire discharged him on March 19, 1976.

McCormick filed suit against Empire in June 1976 to recover for wrongful termination of his employment contract. Empire counter-claimed and moved for a preliminary injunction, alleging that by accepting employment with one of its competitors, Diversified Accounts, McCormick had violated a noncompetition clause in the employment agreement. That anticompetition provision precluded McCormick from working for any business providing a service similar to that offered by Empire within 100 miles of the city limits of Chicago for 2 years after his involuntary termination, but for only 6 months if McCormick resigned. After an evidentiary hearing, the trial court denied Empire's motion for a

preliminary injunction, and Empire is appealing that ruling. The sole issue before this court is whether the trial judge abused his discretion in refusing to grant a preliminary injunction.

■■■ For a preliminary injunction to issue, the party seeking the injunction must carry the burden of persuasion on four issues: (i) that he has no adequate remedy at law and will be irreparably injured if the injunction is not granted; (ii) that the threatened injury to him will be immediate, certain and great if the injunction is denied while the loss or inconvenience to the opposing party will be comparatively small and insignificant if it is granted; (iii) that he has a reasonable likelihood of prevailing on the merits of the case; and (iv) that granting the preliminary injunction will not have an injurious effect upon the general public. (*Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore Products, Inc.* (7th Cir. 1976), 545 F.2d 1096, 1097; *Professional Business Management, Inc. v. Clark* (1967), 83 Ill. App. 2d 236, 241, 227 N.E.2d 371; *Miollis v. Schneider* (1966), 77 Ill. App. 2d 420, 425, 222 N.E.2d 715; *John T. O'Brien v. Barney Matual* (1957), 14 Ill. App. 2d 173, 188, 144 N.E.2d 446.) Empire failed in two respects to carry the burden entitling it to a preliminary injunction. It did not establish that it required the protection of a preliminary injunction to avoid immediate, certain and ascertainable injury and that the resultant harm to McCormick from such an injunction would be comparatively small and insignificant. Empire also failed to show a reasonable likelihood of prevailing on the merits. Consequently, the trial judge did not abuse his discretion in denying the preliminary injunction.

Evidence was offered indicating that approximately 250 collection agencies compete with Empire in the Chicago area for many of the same customers, and that about 700 collection agencies are located within the 100-mile radius of Chicago covered by the noncompetition provision in question. The average time that Empire retains an account is 16 to 24 months. Empire experiences a 50- to 75-percent customer turnover rate annually, and this is standard for the industry. Creditors seeking to collect accounts frequently move from one credit agency to another and it is not unusual for one company to use the services of several collection agencies simultaneously. It is in this veritable maelstrom of competitive activity that McCormick worked for Empire, and briefly for Diversified, as a salesman, soliciting new accounts and servicing old ones.

When McCormick joined Diversified in June 1976, he sent letters to some of the people he knew and handled business for at Empire, advising them of his change of employers, and soliciting their business. Yet, no evidence was presented that McCormick was successful in taking away any of Empire's customers in the month he was employed by Diversified after he sent these letters and prior to the hearing on the preliminary

injunction motion. There was no evidence that any Empire customers stopped listing accounts with Empire because of McCormick's efforts on behalf of Diversified. Even if, as Empire suggests and McCormick denies, a salesman's personality or relationship with a particular customer were crucial to attracting and retaining accounts in the collection agency business, the evidence failed to establish that McCormick would be likely to draw any significant amount of business away from his former employer in the future.

■■ In such a keenly competitive and constantly changing marketplace where personal contact seems of questionable importance, it does not appear that McCormick will cause any immediate, certain or great injury to Empire by continuing to work for one of its 250 competitiors in the Chicago area. In contrast, the concomitant disadvantage to McCormick will be considerable. Enforcing the noncompetitive provision as written would preclude McCormick from working in southern Wisconsin and northern Indiana, although there was no showing that Empire was licensed to operate in Wisconsin or Indiana or that Empire even did business in the entire 100-mile radius from Chicago's city limits covered by the noncompetition agreement. In addition, the agreement restricts McCormick from working in his usual role as a collection agency salesman, and also in any other capacity for any concern offering a service similar to Empire's. Enforcement of the restrictive covenant by injunction will exclude a 40-year-old man from his primary occupation, and possibly force him to move his family from the area in which he has lived for many years. Such a result does not involve a small and insignificant inconvenience to McCormick, especially when balanced against the minimal and unnecessary protection a preliminary injunction would afford Empire. For this reason alone, the application was properly denied.

■■ An additional reason for denying the preliminary injunction is Empire's failure to demonstrate a reasonable likelihood of prevailing on the merits. First, the evidence reviewed above relating to the keen competition, large market and frequent turnover of customers in the collection agency business bears directly on this issue. Second, Empire offered no evidence to demonstrate that McCormick was dismissed for cause. If McCormick was wrongfully discharged, the restrictive covenant in question cannot be enforced.

■■ Third, the agreement extending the term of McCormick's employment to 1982 supports the conclusion that the anticompetitive provision was part of an employment agreement, rather than ancillary to a sale of the business. But, no matter how the provision is characterized, Empire did not demonstrate a reasonable likelihood of proving it enforceable. If the anticompetition provision is viewed as part of an

employment contract, it was unenforceable because Empire did not show that the restriction was reasonably necessary for the protection of its business. (*House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 225 N.E.2d 21; *Emery-Drexel Livery v. Cook-Du Page Transportation Co.* (1976), 40 Ill. App. 3d 937, 353 N.E.2d 182; *Leavitt Co. v. Plattos* (1975), 27 Ill. App. 3d 598, 327 N.E.2d 356.) Empire itself published brochures which announced the types of businesses from which it drew its customers. Any collection agency, therefore, would be able to contact Empire's customers by soliciting the firms listed under that type of business in a classified directory. (See *McCann Construction Specialties Co. v. Bosman* (1977), 44 Ill. App. 3d 1020, 1023, 358 N.E.2d 1340.) In addition, evidence was offered showing that there was nothing confidential about the names and addresses of the firms Empire and its competitors were serving, but instead that they were common knowledge in the trade, usually ascertainable by anyone engaged in the collection business.

■■ ■ Even if, as Empire argues, the anticompetitive provision is considered as part of the sale of the business, it is unenforceable as written. Such a provision improperly restrains competition when its effect exceeds what is reasonably necessary to restrict the seller from competing for the business that was purchased. (*General Bumper Co. v. Action Bumper Co.* (1966), 78 Ill. App. 2d 259, 223 N.E.2d 457.) The geographical scope of the 100-mile radius provided for is unreasonably broad since it extends to areas in which there was no evidence Empire operated. Under the circumstances presented by this case, the anticompetitive provision is unnecessarily broad in restricting McCormick from accepting employment in any capacity with a collection agency rather than limiting the restriction to solicitation of business. When compared with the provision permitting McCormick to compete after only 6 months if he quit voluntarily, the 2-year temporal restriction on competition after involuntary termination appears to be more a penalty than a restriction reasonably necessary to protect the interests of the purchaser of a business.

Illinois law vests a trial judge with large discretionary power in granting or denying an order for an injunction. Unless the reviewing court finds that discretion has been abused, the order will not be set aside. *Lonergan v. Crucible Steel Co. of America* (1967), 37 Ill. 2d 599, 229 N.E.2d 536; *Armour & Co. v. United American Food Processors, Inc.* (1976), 37 Ill. App. 3d 132, 345 N.E.2d 795; *K.F.K. Corp. v. American Continental Homes, Inc.* (1975), 31 Ill. App. 3d 1017, 335 N.E.2d 156.

Judgment affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.