HYDROAIRE, INC., Plaintiff-Appellant, *v.* THOMAS SAGER *et al.*,
Defendants-Appellees.

First District (5th Division)　No. 81-423

Opinion filed July 17, 1981.

John A. Relias and Richard F. Zehnle, both of Vedder, Price, Kaufman & Kammholz, of Chicago, for appellant.

David W. Slaby and Stanley L. Ferguson, both of Kirkland & Ellis, of Chicago, for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff[1] brings this interlocutory appeal from an order of the trial court dissolving a temporary restraining order and denying its motion for the issuance of a preliminary injunction preventing defendant Thomas Sager (hereafter Sager)[2] from soliciting and taking orders from its customers. It is contended that the trial court abused its discretion in refusing to issue the injunction because Sager breached (1) his duty of loyalty as plaintiff's employee and (2) a covenant not to compete, as part of his employment contract with plaintiff.

Plaintiff sought to enjoin Sager from soliciting or accepting any business or orders for industrial sealing devices from plaintiff's customers with whom Sager had dealt on plaintiff's behalf as its employee. On November 25, 1980, a temporary restraining order was entered prohibiting such activity.

The record discloses that both plaintiff and Chicago Seal Products Corporation (hereafter CSPC) are engaged in the sale and repair of industrial sealing devices, in which mechanical seals and other related products are used in pumps and associated machinery to block or restrict the flow of liquids moved by such machinery. Although plaintiff's business includes the designing, selling and repair of pumps and air pressure systems, over 95% of its activities concerns pumps.

Diedrick Brinkman, plaintiff's vice president and general manager, testified at the preliminary injunction hearing that Sager had spent most of his career in the sale and repair of seals and sealing devices, particularly in the Chicago area "after-market," which is the most profitable aspect of the business and includes replacement parts for pumping machinery and services to maintain the original equipment; and that plaintiff offered him employment in the summer of 1979 because of his expertise in the mechanical seals and packing after-market, his knowledge of customers and because of plaintiff's desire to expand its after-market business.

---

[1] Hydroflo Manufacturing Corporation was a wholly-owned subsidiary of Hydroaire, Inc., and they will be treated as a single plaintiff in this opinion as they were in the briefs.

[2] Defendant Thomas Sager (Sager) was an employee of plaintiff and is now president and co-owner with his wife of defendant Chicago Seal Products Corporation.

Sager began receiving compensation in September 1979 but, due to personal injuries, was unable to begin work on a regular basis until December 1979 or January 1980. In October 1979 he signed an employment agreement with plaintiff which included the noncompetition provision in question and, after returning to work, he proposed that plaintiff become more involved in the seal and packing after-market by establishing a separate division with a marketing program which required purchasing new tooling and hiring new personnel. Plaintiff acted on Sager's proposal by investing between $30,000 and $50,000 in the new division and by hiring George Gregorowicz, who also had expertise in the field. Sager believed the new division would be profitable because he would attract the customers he had serviced before employment with plaintiff, and when the new division began operation defendant was assigned those customers. The new division was profitable only in June, its sales steadily declining thereafter until defendant notified Brinkman on October 3, 1980, of his intention to leave plaintiff's employment. He then agreed to stay only if plaintiff established a separate corporation with 60% ownership in plaintiff and 40% in Sager and if plaintiff put the new facility in a separate location. Plaintiff accepted defendant's demands with the reservation that a separate location for the new corporation would not be established at that time because of the cost. Sager then rejected plaintiff's offer and informed plaintiff that he was going with his own company.[3]

Sager testified that he was president of CSPC; that prior to resigning his relationship with plaintiff, he accepted orders from customers of plaintiff and filled them himself; that during his employment several businesses were customers of plaintiff and also of CSPC; and that he sent several seal repair orders to another company, Redeseal Corporation (Redeseal), instead of turning them over to plaintiff.

Certain business records of CSPC, admitted by stipulation, indicated that Sager received and filled for himself orders from companies which plaintiff alleges were its customers. It was further stipulated that while Gregorowicz was employed by plaintiff, he too caused several of plaintiff's orders to be filled by CSPC; that Arthur Arnzen of Sherwin-Williams Company would testify that in June of 1980, he gave three orders to Sager for the purchase and repair of seals by plaintiff and that in July 1980 in conjunction with Sager, he cancelled those orders and reordered through CSPC; that Dennis Offerman of Stepan Chemicals Corporation would testify that on February 28, 1980, he released certain seals to defendant for repair or replacement by plaintiff but that Stepan Chemical received an invoice for repair from Redeseal; and that Edward Pine of the Kitchens of Sara Lee would testify that in August of 1980, Sara

---

[3] The date of defendant's resignation is disputed. Plaintiff asserts it was on October 20, 1980; defendant claims September 15, 1980.

Lee gave Sager an order for the purchase of several seals from plaintiff, but that order was filled by CSPC.

The trial court granted defendant's motion to deny the injunction, holding *inter alia* that while Sager owed plaintiff a duty of loyalty as its employee and admitted taking orders from plaintiff's customers, an injunction based on breach of loyalty would be inconsistent with its finding that the restrictive covenant was an unenforceable *per se* covenant against competiton.

OPINION

■■ A preliminary injunction is a provisional remedy (*Spunar v. Clark Oil & Refining Corp.* (1977), 53 Ill. App. 3d 477, 368 N.E.2d 990; *Kraft v. Solon* (1975), 32 Ill. App. 3d 557, 336 N.E.2d 577) granted before the hearing of a case on its merits in order to preserve the status quo. (*Cook County v. Rosen & Shane Wine & Spirits, Inc.* (1978), 58 Ill. App. 3d 744, 374 N.E.2d 838; *Armour & Co. v. United American Food Processors, Inc.* (1976), 37 Ill. App. 3d 132, 345 N.E.2d 795; *Frederick Chusid & Co. v. Collins Tuttle & Co., Inc.* (1973), 10 Ill. App. 3d 818, 295 N.E.2d 74). The status quo preserved thereby has been defined as the last, actual, peaceable uncontested status which preceded the pending controversy. *Summit Electric Co. v. Mayrent* (1974), 17 Ill. App. 3d 545, 308 N.E.2d 313; *Duval v. Severson* (1973), 15 Ill. App. 3d 634, 304 N.E.2d 747.

■■ In order that a preliminary injunction may issue, the plaintiff must establish by a preponderance of the evidence that (1) a certain and clearly ascertained right needs protection, (2) irreparable injury will occur without the injunction, (3) no adequate remedy at law exists, and (4) there is probability of success on the merits of the case. (*U-Haul Co. of Central Illinois v. Hindahl* (1980), 90 Ill. App. 3d 572, 413 N.E.2d 187; *ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1978), 62 Ill. App. 3d 671, 379 N.E.2d 1228; *Stocker Hinge Mfg. Co. v. Darnel Industries, Inc.* (1978), 61 Ill. App. 3d 636, 377 N.E.2d 1125.) In addition to its consideration of those criteria, the trial court also must balance the equities or relative inconvenience to the parties and determine thereby whether a greater burden will be imposed on the defendant by granting the injunction than on the plaintiff by denying it. (*ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.; Booth v. Greber* (1977), 48 Ill. App. 3d 213, 363 N.E.2d 6.) Finally, the sole question on review is whether the trial court abused its discretion in granting or denying the injunction. (*Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 329 N.E.2d 414; *Schlicksup Drug Co. v. Schlicksup* (1970), 129 Ill. App. 2d 181, 262 N.E.2d 713), and the trial court's findings will not be disturbed unless against the manifest weight of the evidence (*Booth v. Greber*).

In the instant case plaintiff initially contends that the breach by an

employee of the duty of loyalty owed the employer creates an independent basis for injunctive relief, which thereby prohibits the employee from soliciting the employer's customers on behalf of another or from performing acts in direct competition with the employer during the term of employment. We do not think, however, that the cases upon which plaintiff relies support its contention.

In *ABC Trans National, Inc. v. Aeronautics Forwarders, Inc.*, 40% of plaintiff's employees were persuaded to leave at least five of its offices. Plaintiff's customer cards, addressograph plates, rolodex files and directories were fraudulently requisitioned for defendants and paid for by plaintiff before defendants' departure. Air bills were prestamped by defendants using plaintiff's equipment. There was also direct evidence that defendants conspired to destroy plaintiff's business, whereby defendants informed plaintiff's customers and employees that plaintiff was insolvent. Finally, the court determined that as a result of defendants' actions, plaintiff was unable to serve its remaining customers as effectively or to win back lost business and that plaintiff's ability to compete in the future was adversely affected thereby. In the present case, by contrast, only Gregorowicz left plaintiff's employ and there was no showing that Sager appropriated any customer list or other business property of plaintiff or conspired against it. Moreover, plaintiff fails to explain how its ability to compete effectively was to any significant degree impaired by Sager's actions, as plaintiff is a large company compared to CSPC, and the sale and repair of industrial sealing devices comprise only a small fraction of its business.

In *Lind v. Carson* (1958), 16 Ill. App. 2d 542, 148 N.E.2d 814 (abstract), defendants conspired against their employer to fraudulently solicit plaintiff's established customers for themselves while still employed and secretly set out to appropriate for their own profit plaintiff's formulas used in pest extermination, sources of materials and plaintiff's vehicles. Here, however, the record does not disclose that Sager conspired with anyone to appropriate plaintiff's customers, confidential information or anything of a proprietary nature. As there was no showing that Sager sought to obtain any aspect of the business which plaintiff had established prior to employing him, it appears that he has not retained or continued to make use of anything in which plaintiff had a proprietary interest.

Similarly, in *Town & Country House & Homes Services, Inc., v. Evans* (1963), 150 Conn. 314, 189 A.2d 390, defendant, through his employment by plaintiff had access to a list of customers used in plaintiff's house cleaning business. During the three years that defendant worked for plaintiff and prior to terminating, defendant actively solicited those customers for his new business. In the present case, Sager or

Gregorowicz prior to their employment with plaintiff either serviced or had had direct sales contact with all of the customers with which plaintiff now seeks to prevent Sager from doing business. Plaintiff had not seriously pursued the seal repair after-market until it employed Sager and apparently set up a separate division to accommodate this business in the expectation of establishing long-standing customer relationships. Furthermore, there is no indication that Sager solicited the business he received, but rather it appears that he accepted orders as they came in, and it was not established that in so doing he sought to garner the future business of those customers.

In *Sanitary Farm Dairies, Inc. v. Wolf* (1961), 261 Minn. 166, 112 N.W.2d 42, defendant informed half of plaintiff's customers whom he called on that he was starting his own business. He sent direct mail solicitation to six of them, and he obtained a customer list through his employment with plaintiff. The Minnesota court rested its decision on a theory of unfair competition rather than on the question of plaintiff's property right in the customer list, as plaintiff asserts here. Significantly, that court held that although defendant had made actual solicitations and engaged in unfair competition by convincing plaintiff that he had reconsidered his intention to resign, the form of injunctive relief sought could not be granted. The court reasoned that enforcement of a preexisting restraining order was deemed to have been sufficient to negate the effects of defendant's in-term solicitation and to allow plaintiff an adequate opportunity to do its own soliciting. The present case is thus distinguishable, as there was no showing of solicitation by Sager or appropriation of a customer list made available to him through his employment.

Finally, in *United Board & Carton Corp. v. Britting* (1959), 63 N.J. Super. 517, 164 A.2d 824, *aff'd* (1960), 61 N.J. Super. 340, 160 A.2d 660, defendants were enjoined for two years for conspiring to take control of their employer's corrugated box business by wrongfully diverting a large part of it before terminating. They did so by enticing away some of plaintiff's best customers, removing the customers' dies, disparaging plaintiff, resigning *en masse*, and using confidential information of plaintiff during their employment. Here, by contrast, it appears that there was no conspiracy but that Sager did divert a large part of plaintiff's total volume of the seal repair business before he resigned. While Sager may have lured away some of plaintiff's customers once they had placed orders, there is no indication that he removed any of plaintiff's equipment, caused mass resignation or used confidential information. Rather, as the testimony of Brinkman revealed, Sager brought the customer information in question to plaintiff.

■■ In the light of the foregoing cases, while under some circumstances

an employer may have a cause of action for injunctive relief against an employee after his termination for breach of his duty of loyalty prior thereto, we do not believe such circumstances exist here. Plaintiff correctly states that Sager does not deny that he and Gregorowicz conducted business on their own behalf while employed by plaintiff and that some of its customers—the Sherwin-Williams Company and the Kitchens of Sara Lee—were simultaneously customers of CSPC. It was not established, however, that Sager or Gregorowicz actively sought the orders from plaintiff's customers for the purpose of persuading them to purchase sealing devices from Sager or CSPC. Neither was it shown that Sager had access to or made use of plaintiff's business records, including its customer list. We conclude, therefore, that plaintiff is not entitled to injunctive relief on the basis of a breach of loyalty.

Plaintiff further contends that it has an actionable claim for injunctive relief based on a protectable business interest which the noncompetition covenant in Sager's employment contract is reasonably designed to protect, and it asserts that being free from his interference with its customers constitutes such interest. Sager maintains that plaintiff possesses no such interest. The covenant in question provides:

> "During the term of his employ by the Company or Hydroaire, Inc. or any of its other affiliates and for a period of two (2) years following the date of the termination of such employment, Employee shall not (as stockholder, principal, partner, lender, director, officer, agent, employee, consultant, or otherwise, with or without compensation), engage in or be financially interested in any entity (other than the Company or another of its affiliated companies) which is competitively engaged in the solicitation of business from or sale of products or services to any person who was a customer or was solicited to be a customer by the Company or any of its affiliates, including but not limited to Hydroaire, Inc., or the successors and assigns, during the period that Employee was employed by the Company or Hydroaire, Inc. or any other affiliate."

■■■ The enforceability of a restrictive covenant in an employment contract is dependent upon its reasonableness in terms of its impact on the parties to the contract and on the public. (*House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 225 N.E.2d 21.) Among the requirements for the enforceability of a post-employment restrictive covenant is a protectable business interest. As stated in *Image Supplies, Inc. v. Hilmert* (1979), 71 Ill. App. 3d 710, 712-13, 390 N.E.2d 68, 70:

> "Whether a restrictive covenant is enforceable is a question of law. [Citation.] * * * [C]ovenants not to compete in employment contracts are carefully scrutinized by the courts. [Citation.] A

restrictive covenant may be held enforceable only if the time limit and geographic scope are reasonable, trade secrets or confidential information are involved, and the restriction is reasonably necessary for the protection of a legitimate business interest. [Citation.]" The pattern among the cases reveals several factors which the courts have recognized as types of interests deemed to be proprietary and protectable for the purpose of enforcing a covenant not to compete. Thus, such a covenant will be enforced if an employee through his employment acquires confidential information which he subsequently attempts to use for his own benefit (*National Advertising Service, Inc. v. Kolar* (1975), 28 Ill. App. 3d 671, 329 N.E.2d 300) or if the employer has a near-permanent relationship with his customers and the employee would not have had contact with the customers absent his employment by plaintiff (*Cockerill v. Wilson* (1972), 51 Ill. 2d 179, 281 N.E.2d 648; *Canfield v. Spear* (1969), 44 Ill. 2d 49, 254 N.E.2d 433; *Booth v. Greber*). Conversely, no such protectable interest is recognized, rendering thereby a noncompetition covenant unenforceable, where it is determined that the customer list is not confidential (*House of Vision, Inc. v. Hiyane*), the customer relationship is impermanent (*McCormick v. Empire Accounts Service, Inc.* (1977), 49 Ill. App. 3d 415, 364 N.E.2d 420), or no other trade secret or secret information is imparted to the employee (*Isabelli v. Curtis 1000, Inc.* (1975), 31 Ill. App. 3d 1030, 335 N.E.2d 538; *Leavitt Co. v. Plattos* (1975), 27 Ill. App. 3d 598, 327 N.E.2d 356; *United Travel Service, Inc. v. Weber* (1969), 108 Ill. App. 2d 353, 247 N.E.2d 801). In essence, plaintiff must show injury to its legitimate business interests separate and distinct from defendant's breach of the restrictive covenant in order to secure enforcement thereof through injunctive relief; otherwise, such covenant is deemed an unenforceable attempt to prevent competition *per se. Image Supplies, Inc. v. Hilmert; Booth v. Greber; National Advertising Service, Inc. v. Kolar; Vander Werf v. Zunica Realty Co.* (1965), 59 Ill. App. 2d 173, 208 N.E.2d 74.

■■ In our view, plaintiff in the present case failed to show that the identity of customers in need of seals or seal repairs for pumps is confidential information in need of protection. There was testimony by Brinkman that he did not consider the names and addresses of plaintiff's customers to be confidential, and it was undisputed that Sager's initial contact with plaintiff's customers was not through his employment with plaintiff but that he had actually done business with or had knowledge of those customers prior thereto and indeed had brought many of those customers to plaintiff. Thus, it appears that plaintiff seeks to restrain Sager from contacting customers previously known and readily available to him, rather than to protect a legitimate aspect of its business against an improper or unfair method of competition. (See *Image Supplies, Inc. v.*

*Hilmert.*) As stated in *Murphy v. Murphy* (1975), 28 Ill. App. 3d 475, 478, 328 N.E.2d 642, 644: "While clientele may properly be called the customers of a particular business, they cannot be considered the 'property' of that business. While a business can have a proprietary interest in lists of customers which it maintains, no business has a proprietary interest in the customers themselves." Neither was anything learned by Sager during his employment, although plaintiff now seeks to prevent him from using such knowledge. It is also noteworthy that other key employees of plaintiff did not sign similar employment contracts containing noncompetition covenants. Were plaintiff so concerned about protecting confidential information of value, it seems unlikely, and inconsistent with the position urged here, that it did not require other employees having knowledge of or access to such information to similarly refrain from using it to their personal advantage.

Plaintiff relies on *Vendo Co. v. Stoner* (1969), 105 Ill. App. 2d 261, 245 N.E.2d 263, for the proposition that defendant's post-employment activities should be enjoined through enforcement of the restrictive covenant, as they are an affirmation of his in-term violation. In that case plaintiff purchased the assets of defendant's corporation and, in addition, executed an employment contract whereby defendant was to serve in an executive capacity with plaintiff for five years. The sales agreement contained a covenant providing that defendant corporation agreed not to compete with plaintiff in the manufacture and sale of vending machines for 10 years from the date of sale. The employment contract also contained a five-year noncompetition agreement. Although the court found both covenants to be enforceable against violations by defendant, our reading of *Vendo Co. v. Stoner* suggests that indispensable to its affirmance of the injunction against the individual defendant was the finding that the covenants had to be considered "coextensive to be meaningful." (105 Ill. App. 2d 261, 286, 245 N.E.2d 263, 276.) Thus, defendant's in-term violation, as the alter ego of his corporation, of the covenant imposing a 10-year restraint on competition and ancillary to the sales contract was crucial to the court's determination.

The circumstances before us are thus distinguishable from those in *Vendo Co. v. Stoner*, as there was no contract here for the sale of the assets of a business. For theoretical reasons, the courts of this State have distinguished noncompetition covenants in employment contracts from those ancillary to the sale of a business. As stated in *O'Sullivan v. Conrad* (1976), 44 Ill. App. 3d 752, 755, 358 N.E.2d 926, 929:

> "There are two separate lines of cases involved in the area of restrictive covenants not to compete. One deals with covenants ancillary to employment contracts and the other deals with covenants ancillary to the sale of a business or property. Since a

> difference exists in the nature of the interests sought to be protected in the case of an employer on the one hand from the case of a buyer on the other, decisions involving restraints ancillary to contracts of employment cannot be of significant value or weight in cases involving restraints ancillary to a sale."

The basis for the distinction rests upon the view that the purchaser of a business is entitled to protection against the former owner's appropriation of the good will purchased with the business. (See *General Bumper Co. v. Action Bumper Co.* (1967), 78 Ill. App. 2d 259, 223 N.E.2d 457; *McCook Window Co. v. Hardwood Door Corp.* (1964), 52 Ill. App. 2d 278, 202 N.E.2d 36; also see *Symposium—Illinois Supreme Court Review*, 62 Nw. U. L. Rev. 794 (1968).) An employer, as discussed hereinabove, must show injury to a protectable business interest resulting from his former employee's unfair competition. We conclude, therefore, that plaintiff in the case before us has shown no business interest protectable against the rival concern of defendants.

Having failed to establish a protectable interest, *a fortiori*, plaintiff cannot show that it suffered irreparable injury (*Leavitt Co. v. Plattos*; cf. *U-Haul of Central Illinois v. Hindahl; Donald McElroy, Inc. v. Delaney* (1979), 72 Ill. App. 3d 285, 389 N.E.2d 1300) or that it lacks an adequate remedy at law. We note that while plaintiff has demonstrated past injury, that fact is not sufficient to merit injunctive relief, since irreparable injury "denotes transgressions of a continuing nature, of such constant and frequent recurrence that no redress can be had at law." (*Sports Unlimited, Inc. v. Scotch & Sirloin of Woodfield, Inc.* (1978), 58 Ill. App. 3d 579, 583, 374 N.E.2d 916, 920.) Plaintiff has failed to show that Sager's transactions on behalf of CSPC while employed by plaintiff have caused it specific harm extending beyond his termination. Moreover, plaintiff does not indicate how it will be prevented from competing on a fair and equal basis for customers as a result of his violations. *Cf. United Board & Carton Corp. v. Britting*.

We are mindful that plaintiff hired Sager as a key employee and prospective shareholder partly because of his expertise and customer knowledge and that, in reliance upon his representation that through his efforts plaintiff could establish a profitable seal repair division, it expended significant funds to that end. However, we believe that plaintiff has the opportunity to be adequately compensated for Sager's past wrongdoing by virtue of the accounting ordered by the trial court of defendant's profits prior to his termination.

Finally, as to plaintiff's probability of success on the merits, the language in *Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 690, 329 N.E.2d 414, 417, is instructive:

> "All that is necessary is that the petitioning party raise a fair

question as to the existence of the right claimed, lead the court to believe that he probably will be entitled to the relief prayed for if the proof should sustain his allegations, and make it appear advisable that the positions of the parties should stay as they are until the court has had an opportunity to consider the case on the merits."

Of that probability, plaintiff failed to convince the trial court and we cannot say that, in light of the foregoing discussion, the trial court abused its discretion in denying the preliminary injunction.

The judgment is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.